```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
GRAYCE NOVARO,                                              :   MEMORANDUM
                                Plaintiff,                  :   DECISION AND ORDER
                                                            :
                - against -                                 :   19-cv-804 (BMC)
                                                            :
COMMISSIONER OF SOCIAL SECURITY,                            :
                                                            :
                                Defendant.                  :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff Grayce Novaro seeks review of the decision of the Commissioner of Social Security that she is not entitled to Supplemental Security Income benefits under the Social Security Act. After a hearing, an Administrative Law Judge ("ALJ") found that plaintiff had severe impairments of major depressive disorder with anxiety and post-traumatic stress disorder ("PTSD"), traceable in part to the sexual abuse that she suffered as a child and her witnessing the September 11 terrorist attacks. Nevertheless, the ALJ found plaintiff capable of performing a full range of work at all exertional levels, subject to specified nonexertional restrictions to accommodate her impairments. Plaintiff identifies two points of error in the review proceeding: (1) improper evaluation of the medical evidence, which I take as a "substantial evidence" challenge; and (2) inadequate evaluation of her credibility.

The second point is somewhat ironic. Although the ALJ stated generally that plaintiff's "statements concerning the intensity, persistence, and limiting effects of his [sic] symptoms are not consistent with the record as a whole," my reading of the decision is that the ALJ primarily relied on plaintiff's own statements and conduct in determining that she was not disabled. The ALJ first concluded that plaintiff's own words and actions were sufficient evidence of non-

disability, and only then did the ALJ turn to the medical records and find them to be, in substantial part, consistent with that evidence.

Based on plaintiff's statements and conduct at the hearing, in her disability application, and during her examination by the consulting psychologist, the ALJ gleaned the following facts:

- Plaintiff lives alone and is able to care for her dog;
- Plaintiff has never been hospitalized nor has she had episodes of decompensation sufficient to require emergency room care;
- Plaintiff attends to her own personal care;
- Plaintiff is able to do simple calculations, and she performed ten steps with only two corrections in the serial sevens test;
- Plaintiff was able to recall three objects in five minutes and four digits forward and three backwards;
- Plaintiff paid her own bills and can count change;
- Plaintiff drives, including to the beach; and
- Plaintiff has a fiancé.

The ALJ emphasized these facts throughout the order as evidence of non-disability.

Although the ALJ accurately extracted this information from the record, the ALJ did not mention a great deal of other evidence in the record, except perhaps implicitly in the general observation that the "intensity, persistence, and limiting effects of [plaintiff's] symptoms are not consistent with the record as a whole." But plaintiff's treatment notes are replete with self-descriptions of her anxiety and depression. These notes reference frequent crying spells, feelings of hopelessness, dizziness/vertigo, nervousness in public places, panic attacks, nausea, sleeping problems, poor eye contact, and flashbacks to her prior trauma.

Instead of grappling with this evidence, the ALJ emphasized excerpts from six treatment notes. The ALJ pointed to observations that plaintiff had intact recent and remote memory,

normal thought content and pattern, normal attention and concentration, and good insight. The ALJ then found these observations consistent with the consulting psychologist's observations that plaintiff had coherent and relevant speech, fair insight and judgment, and no psychomotor diminishment.

The problem is that the evidence from the consulting psychologist, Dr. David Lefkowitz, is of little probative value. He examined plaintiff one time, as is the standard procedure in these cases. His medical source statement is non-evaluative – it simply repeats some of the statements that plaintiff made to him during the examination, which were already summarized in earlier sections of his report. Moreover, it does not offer an opinion on the severity of plaintiff's impairments or her functional capacity. The diagnoses on which Dr. Lefkowitz settled – PTSD; major depressive disorder, recurrent without psychotic features; anxiety disorder, unspecified; and rule out schizoaffective disorder or mild features thereof – are also unhelpful, because there is no dispute about plaintiff's diagnoses. The only useful portion of the report is the prognosis of "fair to poor," which I take to mean that, however severe plaintiff's impairments, there is only a "fair to poor" chance that they will improve. Thus, the report contains only the factual observations about plaintiff's impairments, not a medical opinion that bears substantially on the question of disability.

The only other medical opinion that supports the ALJ's finding of non-disability came from Dr. Carl Anderson, a non-examining state-agency psychiatric consultant. His involvement was limited to reviewing Dr. Lefkowitz's report, two pages of a report from Ms. Figuly, and some hospital records. Dr. Anderson opined that plaintiff did not have any marked limitations.

In contrast, the medical source statements from plaintiff's psychiatric providers contained a wealth of information that bears on the issue of disability, and it almost entirely weighs in favor

of an affirmative finding. Plaintiff's therapist, Margaret Figuly, opined that plaintiff has poor focus and concentration, needs repetition to retain information, has difficulty in maintaining a routine, and "would have difficulty in a work setting." Ms. Figuly also noted that plaintiff had required either hospitalization or emergency room treatment at some unspecified point.[1]

Plaintiff also had a medical source statement from a psychiatric nurse practitioner, Nancy Carr. She had seen plaintiff once every three to four weeks over a twenty-month period, and she would prescribe plaintiff medication. Her findings parallel those of Ms. Figuly, and they portray, in detail, an even higher level of impairment. Like Ms. Figuly, Nurse Carr concluded that plaintiff was incapable of even low-stress work. She also found marked impairments in the areas of understanding and memory, sustained concentration and persistence, social interactions, and adaptation.

Nevertheless, the ALJ gave "little" weight to Nurse Car's opinion and "partial" and "little" weight to Ms. Figuly's opinion. The ALJ offered two reasons for this approach: (1) Nurse Carr was not an "acceptable medical source" under social security regulations, and (2) both Nurse Carr's opinion and Ms. Figuly's opinion were inconsistent with the excerpts from plaintiff's treatment notes. Both reasons are flawed.

Because the opinions of plaintiff's medical providers were so strongly in favor of disability and, just as importantly, the opinions of the consultants were so insubstantial, the ALJ's reasons for giving "little" weight to the treating opinions (effectively rejecting them) are not adequate. See generally Estrella v. Berryhill, 925 F.3d 90, 95–96 (2d Cir. 2019); Burgess v. Astrue, 537 F.3d 117, 128–29 (2d Cir. 2008). As plaintiff's counsel has pointed out, the

---

[1] Ms. Figuly's background and credentials are not entirely clear. The Commissioner refers to her as "Peggy Margaret Figuly," and documents in the record are signed by "Peggy Figuly" and "Margaret Figuly." The ALJ referred to her as "Margaret Figuly, Ph.D.," but while the title following Ms. Figuly's signature is not entirely legible, Ms. Figuly did not indicate that she had a Ph.D.

4

Commissioner needs to move away from evaluating treating providers primarily on whether they have an M.D., D.O., or Ph.D., as the ALJ did here. The new regulations elevate other health care providers to the same level as treating physicians.[2] Although this case does not fall under the new regulations, their common-sense rather than categorical approach – making the source just one criterion for measuring quality to evaluate medical evidence – remains compelling. What is important on this record is that plaintiff's providers knew her very well over a long period, but the consultants did not know her at all. Plaintiff's providers were in the best position to evaluate her narrative and reach conclusions as to the severity of her impairment.

I also reject the ALJ's singling out references in particular treatment notes as undermining Ms. Figuly's and Nurse Carr's conclusions about the severity of plaintiff's impairments. Like any psychiatric patient, plaintiff has good days and bad, and even good sessions and bad sessions – if it was all bad, this case wouldn't be here. The treating professionals were in the best position to meld the positives and the negatives and come up with an opinion. By focusing solely on the negatives, however, the ALJ failed to conduct the proper inquiry. See Estrella, 925 F.3d at 97 ("Cycles of improvement and debilitating symptoms of mental illness are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

I am not suggesting that treating opinions, whether from doctors or other certified professionals, must always control over the opinions of state-agency consultants. As the Commissioner notes, that is not the law. See, e.g., Micheli v. Astrue, 501 F. App'x 26, 28–30 (2d

---

[2] Although certain nurse practitioners are now "acceptable medical sources" under Social Security regulations, those regulations do not apply to claims, including plaintiff's, filed before March 27, 2017. See 20 C.F.R. § 416.902(a)(7) (defining "acceptable medical source" to include "Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title," but only for claims filed on or after March 27, 2017).

Cir. 2012) (summary order). But if the consultants' opinions are to be given controlling weight, they should be much more informed and substantial than the cursory ones that the ALJ accepted here. At the outset, the ALJ has to evaluate the limitations on single-shot examinations by consultants in comparison to lengthy treatment relationships, which is thoroughly discussed in the cases. See, e.g., Selian v. Astrue, 708 F.3d 409, 419 (2d Cir. 2013). A one- or two-hour evaluation is simply not going to impart the knowledge that a professional is going to have of a patient when treatment has spanned years. As noted above, Dr. Lefkowitz didn't conclude much of anything about the degree of plaintiff's impairment or her functional capacity; his "medical source statement" simply avoided the issue. Yet even with these limitations, Dr. Lefkowitz found plaintiff to be "severely depressed."[3]

There is even more to this case than the often-expressed skepticism about consultative examinations. The consultation followed the perplexing pattern that the Commissioner usually employs – there is no indication that Dr. Lefkowitz reviewed a single treatment note from plaintiff's providers, let alone the medical source statements. But where there are competing medical opinions in non-disability litigation, the most probative evidence is usually each expert's critique of the other's conclusions. I do not see why that is any less true in disability cases. But instead, in this case and in most others that I have seen in this context, the Commissioner arranged the consultation before any of plaintiff's treating professionals even rendered their medical source statements. This seems backwards. The claimant should submit any medical

---

[3] As for Dr. Anderson, I have as little to say as did the ALJ. Although the ALJ never even mentioned Dr. Anderson's name, the ALJ did cite a couple of times to Dr. Anderson's rejection of plaintiff's claim in a report dated December 18, 2015. As explained, Dr. Anderson was working on an incomplete record; he had only Dr. Lefkowitz's report, two pages of a report from Ms. Figuly, and some hospital records. The ALJ decided to give Dr. Anderson's opinion "significant weight," yet the ALJ relied on its supposed consistency with the excerpts from plaintiff's treatment notes and Dr. Lefkowitz's non-evaluative report. The ALJ did not otherwise explain why the opinion of this non-examining state-agency psychiatric consultant should be given greater weight than the opinions of Ms. Figuly and Nurse Carr.

6

source statements and any other medical record evidence before the consultation is performed, so the consultation is the last step before the hearing, not a middle step. Or, the Commissioner should at least provide for a follow-up consultation if the treatment follows the initial consultative examination. That way, the consultant would have the benefit of both the claimant's treatment notes and those medical source statements.

It is simply illogical to think that Dr. Lefkowitz could not have given a more robust and better-informed opinion had he seen plaintiff's treatment notes and Ms. Figula's and Nurse Carr's statements. Perhaps there is some reason why the Commissioner feels compelled to not let the professionals join issue on their opinions, leaving the ALJ to navigate the broad channel that often exists between them. But I do not see the reason.

This can be corrected. On remand, the ALJ is directed to conduct a new hearing, and either (1) prior to the hearing, have an additional consultative examination performed in which the consultant has the benefit of all of the treatment notes in this record and the medical source statements from Ms. Figuly and Nurse Carr; or (2) have a medical expert who has reviewed those same documents testify at the hearing. Only then can the ALJ render a new decision on plaintiff's claim.

Plaintiff's motion for judgment on the pleadings [14] is granted and the Commissioner's cross-motion for judgment on the pleadings [18] is denied. The case is remanded for a rehearing pursuant to 42 U.S.C. § 405(g), for the purposes set forth in the preceding paragraph.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
December 23, 2020